1  Larry A. Sackey, Esq. Esquire (Bar No. 54474  )
   **Law Office of Larry A. Sackey**
2  11550 Olympic Blvd., Suite 550
   Los Angeles, California 90064
3  (310) 575-4444
   Facsimile: (310) 575-4520
4  E-mail: lsackey@sackeylaw.com

5  Robert Horn (*to be admitted pro hac vice*)
   Joe Kronawitter (*to be admitted pro hac vice*)
6  **Horn Alyward & Bandy, LLC**
   2600 Grand Boulevard, Suite 1100
7  Kansas City, MO  64108
8  (816) 421-0700
   Facsimile: (816) 421-0899
9  E-mail: rhorn@hab-law.com
        jkronawitter@hab-law.com
10

11 Teresa K. Breman, Esq. (Bar No. 222298)
   **Breman Law Offices**
12 1999 Avenue of the Stars, Suite 1100
   Century City, CA 90067
13 (310) 525-3520
   Facsimile (310) 525-3543
14 E-mail: tbreman@bremanlaw.com

   Attorneys for Plaintiffs,
15 CHRISTOPHER KRUMMELL, in his capacity as Guardian ad Litem for JOHN D.
   KRUMMELL, on behalf of himself and all others similarly situated.

16

17              **THE UNITED STATES DISTRICT COURT**
              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
18

19 CHRISTOPHER KRUMMELL, in his     ) Case No.:  **CV08-01509** CAS FMOx
20 capacity as Guardian Ad Litem for )
   JOHN D. KRUMMELL. on behalf of    ) COMPLAINT FOR:
21 himself and all others similarly situated, ) (1) Elder Abuse;
                                       ) (2) Breach of Duty of Good Faith &
22        Plaintiff,                   ) Fair Dealing
                                       ) (3) Fraud;
23        vs.                          ) (4) Negligent Misrepresentation;
24 NORTH AMERICAN COMPANY             ) (5) Unfair Business Practices
   FOR LIFE AND HEALTH               ) (6) Cal Insurance Code § 781 - Twisting
25 INSURANCE, an Iowa Corporation and ) (7) Constructive Trust
26 DOES 1 through 20 ,                 ) (8) Constructive Fraud
                                       )
27        Defendant                    )
                                       ) JURY TRIAL REQUESTED
28 _____ )

## Allegations Common to All Causes of Action

1.     Plaintiff Christopher Krummell ("Plaintiff") is the duly appointed Guardian ad Litem of John D. Krummell ("Krummell") and brings this action on behalf of him, and all parties similarly situated.

2.     Krummell is an individual residing in the State of California, County of Los Angeles.

3.     Plaintiff is informed and believes and upon such information and belief alleges that defendant North American Company For Life and Health Insurance (hereinafter referred to as "Defendant" and or "NACOLAH") is, and at all times mentioned herein was, an entity incorporated under the laws of Iowa and duly qualified to do business in the State of California as a life insurance company.

4.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES are unknown to Plaintiff who, therefore, sues said Defendants, and each of them, by fictitious names and will ask leave of the Court to amend this complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that defendants sued herein as DOES 1 through 20 inclusive, are in some manner responsible for the events and happenings referred to in this complaint and responsible to Plaintiff as hereinafter alleged.

5.     Plaintiff is informed and believes, and based thereon alleges, that at

all relevant times, each of the Defendants, whether named or fictitiously named as DOE (hereinafter collectively referred to as "Defendants"), was the merging entity, merged entity, parent, subsidiary, acquiring corporation, the agent, servant, successor-in-interest, independent contractor and/or employee of each of the remaining Defendants and, in doing the things herein alleged, was acting within the course and scope of their authority as agents, servants, successors-in-interest, independent contractors or employees, and with the express and/or implied permission, knowledge, consent, and ratification of their co-defendants.

## Jurisdiction and Venue

6.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because:

   a.      This is a civil action filed pursuant to Fed.R.Civ.P. 23 brought by one or more representative persons as a class action;

   b.      The amount in controversy of all class members in the aggregate exceeds the sum or value of $5,000,000.00, exclusive of interest and costs;

   c.      Many members of the putative class are citizens of the State of California, and Defendant is a citizen of a foreign state; and

   d.      All other factual conditions precedent necessary to empower this Court with subject matter jurisdiction and personal jurisdiction

have been satisfied.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions" on which the claim is based occurred locally in this District and/or one or more of the Defendants are subject to personal jurisdiction in this District.

## Summary of Action

8.      This action arises out of the widespread unfair business practice of Defendant NACOLAH designed to induce its Flexible Premium Universal Life Insurance policyholders to default in premium payments thereby causing their policies to lapse through NACOLAH's use of ambiguous and misleading written communications and NACOLAH's failure to adequately notify its policyholders of the true status of the Policies. This class action seeks to halt and remedy the harm caused by Defendant's systematic unfair, fraudulent and unlawful administrative practices in connection with its management and servicing of Policies and notices of scheduled premium payments provided to its policy holders in California and elsewhere in the United States which are designed to deceive its policyholders' and induce their reliance thereby causing their Policies to lapse.

9.      Plaintiff is informed and believes and on this basis alleges that Defendant markets itself to the public portraying itself as a company that has established a tradition of producing quality insurance products, offering products

allegedly providing protection oriented life insurance of superior value to the consumer.

10.    The life insurance Policies at issue, Flexible Adjustable Universal Life Insurance Policies, are flexible premium adjustable life plans wherein the amount of premium due is designed to adjust over time to compensate for projected C.O.I. increases in accordance with a cost of insurance ("C.O.I.") rate schedule.  These Policies, by their express terms limit the maximum amounts upon which the C.O.I. may be increased throughout the life of any policy.   Policyholders are provided a schedule of maximum rates that may be charged over the projected life of the policy at the inception of the policy together with a projection/forecast throughout the life of the policy based on the actual scheduled premiums together with policy values at the guaranteed maximum C.O.I. rates to be charged and guaranteed minimum interest rates that may be earned during the life of the policy. This projection provides an insured with an illustration of the performance of the policy purchased over the life of the policy and values stated therein are represented to the proposed policyholder to be valid, provided the future scheduled payments are made on time.

11.    The Policies have two components: (1) an investment component, known as the Policy Account Value, and (2) a term life insurance component.  The Policy Account Value earns interest at a guaranteed interest rate of no less than

5.5% under the terms of the Policies.  The amount of term life coverage for a Policy is determined by the policyholder at the inception of the Policy, or by subsequent amendment.  Pursuant to the terms of the Policies, if the insured dies, the named or actual beneficiary receives the life insurance component face amount and the policy account value, and dependant on the policy this may include accrued interest, so long as the policy remains in effect.

12.    The annual premium amount of the Policies is determined at the inception of each Policy.  There are three elements to the Policy premium: 1) C.O.I., 2) fees and expenses which are fixed at the inception of the policy, and 3) policy account value. A policyholder may choose to pay the annual policy premium by making monthly, quarterly, semi-annual, or annual payments.  Thus, upon receipt of a periodic premium payment for a Policy the Defendant would: (1) deduct the fixed monthly expense and monthly C.O.I. for the month upon which the premium payment is made and (2) add the remaining premium payment received into the Policyholders' Policy account value to begin to earn interest. Thereafter a monthly deduction from the Policy account value is incurred in the amount equal to the monthly C.O.I. plus and fixed monthly expense for that policy, thereby reducing the policy account value monthly until the next premium payment is made. When the Policy account value falls below zero, the Policy goes into a grace period. The Policy provides for a 61-day grace period to enable a

policyholder's coverage to continue with grace notices when required being mailed the next business day following the premium due date.  At the end of the 61 day grace period, if a required payment is not made by the policy holder the Policy lapses.

13.    Defendant provides each policyholder with an Annual Statement and a Projection of Policy Values on the anniversary date of the Policy.  The Annual Statement recaps the universal life Policy's past year's activity and includes any payments received, interest credited, and expenses, and *--presumably* -- C.O.I., deducted from the account on a monthly basis. The annual statements do not separate out the C.O.I. charged from other expenses, but rather lumps these fees together making it confusing for any reasonable person in a policyholder's position to ascertain the amount of C.O.I. charged against an account value in any given twelve month period.  The Projection of Policy Values states the "projected annual premium" and the projected stop date of the policy, if premiums are paid in accordance with the Policy terms.

14.    A prime example of the insidious nature of Defendant's practices can be found in Defendant's periodic form notices including its "Premium Due Notices" which purport to represent the due date for a premium and its amount, and its Grace Notices.  In Mr. Krummell's case he received Defendant's Premium Due Notice for his premium due December 12, 2006, a Grace Notice dated

December 14, 2006 and its Projection of Policy Values Statement dated May 12, 2006. All appear to represent that the "projected annual premium" on Krummell's policy for the next twelve month period was $13,161.24, to be paid quarterly, assuming that the Policy is intended to remain in force through May 12, 2022.  A true and correct copy of Defendant's periodic premium statement due December 12, 2006 is attached hereto as Exhibit "A" and incorporated as if fully set forth herein.  A true and correct copy of Defendant's grace notice dated December 14, 2006 is attached hereto as Exhibit "B" and incorporated as if fully set forth herein. A true and correct copy of the Projection of Policy Values dated May 12, 2006 is attached hereto as Exhibit "C" and incorporated as if fully set forth herein.

15.    Specifically, Krummell purchased his policy in May 1987 with life coverage in the amount of $500,000 at the age of 61.  The policy was designed at its inception such that it would not lapse until the year 2007 so long as the scheduled policy premiums were maintained.  In or about 2000, the policy was revised to be designed not to lapse until the year 2022. This was well beyond Krummell's actuarial life expectancy.  Beginning in May 1987 through December 2006 Krummell made all scheduled premium payments in accordance with the policy provisions and invoices provided to him by NACOLAH, and did so on a timely basis.  The last periodic Premium Due Notice received on Krummell's Policy was for the quarterly premium payment due December 12, 2006 in the

amount of $3,290.31. (Exhibit "A").   Krummell's scheduled premium payment in accordance with the policy terms and Premium Due Notice was paid on December 8, 2006 and posted received by Defendant on December 14, 2006.   Defendant provided its Grace Notice dated December 14, 2007 stating the Policy was in its lapse period. (Exhibit "B"). The Grace Notice stated additionally that the Premium amount was $3,290.31, that it was paid on December 14, 2006 and that the frequency of premium payments is quarterly, reasonably indicating the next premium payment was not due until March 12, 2007.   Moreover, and notwithstanding that $13,161.24 was represented to be the "projected annual premium" for the Policy by Defendant in its Projection of Policy Values dated May 12, 2006, Krummell had made four payments of $3,290.31 totalling$13,161.24 in the six month period between June 10, 2006 and December 8, 2006 immediately preceding this non-sensical notice, Exhibit "B".   Without any further notice or explanation, Defendant lapsed Krummell's policy on February 15, 2007. (Exhibit "D") Indeed, in just the past ten years alone since Krummell's 70th birthday, he had invested approximately $200,000.00 in premium at the time of Defendant's wrongful lapse.

16.   Without waiving his claim that his Policy had been improperly lapsed, Krummell made an immediate demand for reinstatement upon receipt of Exhibit "D", the Notice of Lapse. This demand was accompanied by his tender of full

payment for allegedly delinquent premiums.   Defendant conditioned any reinstatement of a Policy following lapse on the policyholder's insurability at that time. In furtherance of establishing insurability Krummell was required to also submit a completed application for reinstatement.  Krummell, then 80 years old was thereafter denied reinstatement, on the basis that as not surprisingly it would be extremely difficult if not impossible for a policyholder at Krummell's age, and those similarly situated seniors to qualify as insurable based upon the stringent standards applied.

17.   This action seeks relief for ongoing violations of law, including, *inter alia:*

(a) Appropriate damages, injunctive relief and/or restitution to all members of the class and the general public, including exemplary damages where and if appropriate;

(b) If appropriate, implementation of equitable and injunctive relief; and

(c) Such other relief as the Court deems just and proper.

### Class Action Allegations

18.     Plaintiff Krummell purchased an Adjustable Life Insurance Policy from Defendants, policy number ending in 7201.  The policy was issued on May 12, 1987.  The face amount on the policy was $500,000.

19.     Krummell was born in 1926 and is currently 81 years of age.

20.     Unless otherwise specifically stated herein, and pursuant to Fed.R.Civ.P. 23, this action is instituted by the Plaintiff in his capacity as guardian ad litem for Krummell on behalf of Krummell, and all persons similarly situated. The class that Plaintiff represents consists of the following subclasses:

(a) All California residents and residents elsewhere in the United States under the age of 65 who purchased or renewed Flexible Adjustable Universal Life Insurance policies issued by Defendants and who were insured as of four years prior to the date of filing this complaint, that paid insurance premiums as noticed by Defendant but who were induced by Defendant through its use of uniform misleading written communications to default in premium payments for the life insurance Policy thereby causing their Policies to lapse.

(b) All California residents and residents elsewhere in the United States between 65 years old and 69 years old who purchased or renewed Flexible Adjustable Universal Life Insurance policies issued by Defendants and who were insured as of four years prior to the date of filing this

complaint that paid insurance premiums as noticed by Defendant but who were induced by Defendant through its use of uniform misleading written communications to default in premium payments for the life insurance Policy thereby causing their Policies to lapse.

(c) All California residents and elsewhere in the United States 70 years of age and older who purchased or renewed Flexible Adjustable Universal Life Insurance policies issued by Defendants and who were insured as of four years prior to the date of filing this complaint that paid insurance premiums as noticed by Defendant but who were induced by Defendant through its use of uniform misleading written communications to default in premium payments for the life insurance Policy thereby causing their Policies to lapse.

(d). Beneficiaries of the insureds of subclasses A, B and C, throughout the United States, who, but for Defendant's wrongful lapse of its Policy as described herein, would have received death benefits upon the death of the members of subclasses A, B and C who had purchased or renewed Flexible Adjustable Universal Life Insurance policies issued by Defendant and who were insured as of four years prior to the date of filing this complaint  and paid insurance premiums as noticed by Defendant, but who were induced by Defendant through its use of uniform misleading written communications to

default in premium payments for the life insurance Policy thereby causing their Policies to lapse, and who thereafter died subsequent to the lapse.

21.    Plaintiff is informed and believes and on this basis alleges that the class is so numerous that it is impracticable to bring all members of the class before the court. The class is composed of hundreds of persons geographically dispersed throughout the State of California and elsewhere in the United States, the actual joinder of whom in one action is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the court. The class is sufficiently numerous, since it is estimated that NACOLAH has insured thousands of individuals in California and elsewhere in the United States under its Universal Life Policies. The names and addresses of the class members are readily obtainable from NACOLAH.

22.    The claims for relief asserted herein on behalf of Krummell and the putative class members present questions of law and fact common to the class, that are substantially similar and predominate over questions affecting individual class members, including the following:

(a) Whether NACOLAH deployed a scheme or artifice to deceive and engaged in a common course of business which acted to deceive or mislead Krummell and members of the Class;

(b) Whether the Grace Notices provided by NACOLAH were

routinely and uniformly provided, as a matter of course, to all class members;

(c) Whether NACOLAH engaged in deceptive and misleading acts and practices in servicing the subject Policies;

(d) Whether NACOLAH'S grace period notices were inaccurate, misleading or ambiguous;

(e) Whether NACOLAH had a duty to provide its policy holders with an accurate projection of policy performance based upon Krummell's and all other similarly situated policyholders' scheduled premium payments, when current data in possession of NACOLAH indicated an adjustment to the scheduled premium payment was required to avoid the occurrence of a lapse;

(f) Whether NACOLAH routinely failed to disclose to Krummell and members of the Class material information such as providing its policy holders with an accurate projection of policy performance based upon the plaintiff and members of the class' scheduled premium payments when current data in possession of NACOLAH indicated an adjustment to the scheduled premium payment was required to avoid the occurrence of a lapse;

(g) Whether the annual statements were inaccurate, misleading or ambiguous;

(h) Whether NACOLAH had a duty to notify its policy holders that an increase in the current scheduled premium is required in order to avoid the

occurrence of a lapse in coverage;

(i) Whether NACOLAH knew, disregarded or reasonably should have known that scheduled insurance premiums were insufficient to avoid a lapse or termination of coverage of life insurance policies;

(j) Whether NACOLAH's common acts and practices herein alleged constitute negligent conduct, and/or elder abuse;

(k) Whether NACOLAH breached its implied covenant of good faith and fair dealing with Krummell and members of the Class or otherwise engaged in unfair, fraudulent or wrongful business practice during the Class Period by routinely failing to disclose to Krummell and members of the Class material information such as providing its policy holders with an accurate projection of policy performance based upon Krummell and members of the Class' scheduled premium payments when current data in possession of NACOLAH indicated an adjustment to the scheduled premium payment was required to avoid the occurrence of a lapse;

(l) Whether the values, insurance costs, assumptions, mortality experience, expenses, and interest rates underlying the illustrations for the Subject Policies were contrary or inconsistent to the Company's estimates to Krummell and members of the Class of the needed scheduled premium payments when current data in possession of Defendant indicated an

adjustment to the scheduled premium payment was required to avoid the occurrence of a lapse;

(m) Whether the consumer protection law of California and other states in which the Defendant marketed and sold its Subject Policies were violated by NACOLAH because the values, insurance costs, assumptions, mortality experience, expenses, and interest rates underlying the illustrations for the Subject Policies were contrary or inconsistent to the Defendant's estimates to Krummell and members of the Class of the needed scheduled premium payments when current data in possession of Defendant indicated an adjustment to the scheduled premium payment was required to avoid the occurrence of a lapse;

(n) Whether Krummell and members of the Class are entitled to specific performance, injunctive relief, restitution, disgorgement or other equitable relief against NACOLAH;

(o) Whether plaintiff and members of the Class have sustained damages as a result of NACOLAH's wrongful conduct and, if so, what is the proper measure of such damages; and

(p) Whether the class has been damaged and/or suffered irreparable harm, and the extent of such damages or restitution and/or the nature of the

equitable and injunctive relief, statutory damages or exemplary damages to which each member of the class is entitled.

23.    The claims of Krummell are typical of the claims of the putative class in that:

(a) Krummell was a direct victim of NACOLAH's unfair, unlawful and fraudulent business practices.

(b) Krummell and the putative class members received the exact same misleading and confusing premium notices and received the exact same inaccurate, misleading and/or ambiguous policy period notices and grace period statements, which were prepared solely by the Defendants; and

(c) These facts common to Krummell and the putative class members give rise to the same claims asserted in this Complaint.

24.    Plaintiff as class representative in his capacity as guardian ad litem for Krummell, will fairly and adequately protect the interests of the putative class because:

(a) The Plaintiff has knowledge regarding the facts and circumstances that give rise to their claims and the claims of the putative class members;

(b) The Plaintiff is strongly interested and highly motivated to assert and protect Krummell's rights and the rights of the putative class in a vigorous fashion;

(c) Plaintiff has no interests antagonistic to those of the other members of the class; and

(d) The Plaintiff has retained as class counsel three law firms with substantial experience and expertise in class actions, commercial litigation and business litigation and which have the necessary and requisite resources. These law firms will also vigorously assert and protect the interests of the putative class members.

25.   The questions of law and/or fact common to the Plaintiffs and the putative class members predominate over any questions affecting only individual members of the class, and a class action as asserted herein is superior to other available methods for the fair and efficient adjudication of this controversy, in that, among other elements:

(a) The interests of Krummell and the interests of individual class members in controlling the prosecution of separate actions are outweighed by the  are outweighed by the advantages of adjudicating the common issues of fact and law by means of a class action; individual actions would not be practical considering the relatively small amount of each individual class members' claim;

(b) Upon information and belief, there are no pending certified class actions concerning the controversy at issue or the claims asserted in this case

applicable to Krummell, the Policyholders or the putative class members set forth herein;

(c) Concentrating litigation of these claims in this forum is desirable because it will prevent and avoid a duplication of effort and the possibility of inconsistent results, and this forum represents an appropriate forum to settle the controversy based on the location of the Plaintiffs, the putative class members, the fact that the Defendants do substantial business in this jurisdiction, and the availability of witnesses and evidence;

(d) Any difficulties that may be encountered in management of the class are greatly outweighed by the difficulties of handling multiple actions by individual class members; this class action is a superior method because it furthers judicial economy and efficiency and is in the best interests of Krummell and the putative class members.

(e) Krummell and the members of the Class have all similarly suffered irreparable harm and damages as a result of NACOLAH's unlawful and wrongful conduct. This action will provide substantial benefits to the class since, absent this action, NACOLAH will likely retain millions of dollars received as a result of its wrongdoing and such wrongful, fraudulent and deceptive conduct shall go un-remedied and uncorrected. Absent this action, the class members will not recover damages and/or restitution, will continue

to suffer losses and these violations of law will proceed without remedy, allowing NACOLAH to continue to engage in its unlawful business practices and thereby benefiting there from.

26.    Upon information and belief, there is no material variance in the laws of the different States referenced above that prevents application of California law to the claims of the putative class, and there is no material variance in State laws that render the claims of the class members "uncommon" or "atypical" for purposes of Fed.R.Civ.P. 23.   In the alternative, to the extent there are deviations in applicable State law Plaintiff alleges that any variance in State law can be managed through subclasses concerning common elements and/or claims.

FIRST CAUSE OF ACTION

Elder Abuse

(Plaintiff Krummell & Subclasses B, C & D against NACOLAH

and DOES 1 through 20)

27.    Plaintiff hereby incorporates by reference paragraphs 1 through 26 of this Complaint as though the same were fully set forth herein.

28.    Defendants' conduct constitutes financial elder abuse in violation of California Welfare & Institutions Code section 15610.30. That section provides that financial abuse occurs whenever "a person or entity... [t]akes, secretes,

appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both ... or assists in so doing." Moreover, "[a] person or entity shall be deemed to have taken, secreted, appropriated, or retained property for its wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith."

29.    Defendants' conduct was outrageous. They made affirmative misrepresentations and omitted material facts in order to take millions of dollars from elderly and infirm policyholders, knowing that Plaintiffs needed that money in order to live. Defendants took thousands of dollars from Krummell, an 80-year old infirm man who at the time was suffering with dementia and failing mental faculties, intended to be paid for the purpose of maintaining a life insurance policy in full force when Defendant had knowledge, or in the exercise of reasonable care should have known, that the scheduled premiums being billed were insufficient to maintain the Policy in full force for its intended life term based upon the assumptions stated in the Policy.   Defendant failed to adequately disclose this information to Krummell and all others similarly situated.

30.    Defendants' conduct is exactly what the Elder Abuse Act is intended to redress. Defendants knew that the policy would lapse depriving Krummell, and all other's similarly situated with the right to transact with their policies, which having been in force for more than a decade had significant value in the secondary

market, if Krummell or any other Class members similarly situated chose to assign rights to the Policy during their lifetime to obtain sufficient funds to support the needs foreseeably required for living expenses of the elderly. Defendant was only interested in luring Krummell, and all others similarly situated into a false sense of security and belief that paying and maintaining the stated scheduled premium payment would be sufficient to maintain the Policy in full force, thereby maximizing profits to Defendant while eliminating the possibility of having to pay out a death claim on these policies of elders at the eve of their lives. Defendants knew that Krummell and the Class members were elderly and knew or should have known in the exercise of reasonable care that it would be extremely difficult if not impossible for Krummell and all other Class members, similarity situated to meet the stringent standards required to qualify as insurable, if required to re-qualify for the insurance policy following a wrongfully induced lapsed. Defendants knew there was a strong likelihood that it could successfully eliminate a death claim for the Policy, to its financial benefit. Taking advantage of Krummell's and these Class members age and infirmities, their declining mental health, and their lack of sophistication in complex insurance contracts, Defendants acted so as to encourage Krummell and the Class members to repose trust in it, and Defendants did stand in a position of trust as to Krummell and the Class members. By accepting Krummell's and the Class members premiums for the Policies knowing those

**KRUMMELL V. NACOLAH COMPLAINT**

payments were insufficient to maintain insurance coverage, and thereafter lapsing Krummell's and the Class members Policies, Defendants appropriated and retained Krummell's and the class members personal property with an intent to defraud, for a *wrongful* use, and did defraud Krummell and all others similarly situated and put their property to a wrongful use.

31.     Defendants intended to defraud, and did defraud Krummell and the Class members by misrepresenting the amount of premium required to maintain their Policies in full force and by omitting material representations that Defendant had a duty to provide to Krummell and the Class members.   Defendants have taken gross advantage of Krummell and the Class members purely so that Defendants could benefit financially there from. Thus, the use of ambiguous and misleading communications designed to induce the lapse of Krummell's Policy and that of all others Class members similarly situated, Defendants' acceptance of premium payments, and Defendants' subsequent lapse and termination of these Policies constitutes an appropriation of Krummell's and the Class members property for a wrongful use and with the intent to defraud.

32.     As a result of the aforesaid elder abuse, Krummell and all other Class members similarly situated have suffered general damages in an amount to be determined at trial within the jurisdiction of the Superior Court of the State of California.

33.     In addition to general damages for elder abuse, Plaintiff seeks additional remedies under California <u>Welfare & Institutions Code section 15657</u>, including (1) reasonable compensation for pain and suffering resulting from the abuse, and (2) attorney's fees and costs.

34.     Defendants' aforementioned conduct was intentional, carried out with the intent injure, harass, vex, annoy and deceive Plaintiff, Krummell and all Class members thereby depriving them of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Krummell and all other Class members to a cruel and unjust hardship in conscious disregard of Krummell's and all other Class member's rights, all for Defendants' own financial benefit, so as to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION

### Breach of Duty of Good Faith & Fair Dealing

(Plaintiff Krummell and all Class members against NACOLAH and DOES 1 though 20)

35.     Plaintiff hereby incorporates by reference paragraphs 1 through 26 and paragraphs 28 through 31 of this Complaint as though the same were fully set forth herein.

36.     Defendant NACOLAH at all times relevant herein, had a duty to act fairly and in good faith with Krummell and the Class members in meeting its responsibilities under its policies of insurance.

37.     Implied in the insurance Policies is Defendant's obligation to act fairly and in good faith with its policyholders to avoid unfairly denying its policyholders with the benefits to which it is entitled under the insurance Policies issued by Defendant.

38.     Defendant breached its obligation to act fairly and in good faith toward its policyholders by:

(a) Failing to provide its policyholders with notice that an adjustment in the amount of scheduled premium amount was required if the policy holder did not wish for his or her Policy to lapse;

(b) Providing its policyholders with false and misleading written communications designed to induce the policyholder to lapse his or her Policy.

39.     As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Krummell and all other Class members similarly situated have suffered damages in an amount to be determined at trial.

40.     Defendants' aforementioned conduct was intentional, carried out with the intent to injure, harass, vex, annoy and deceive Plaintiff, Krummell and all

Class members thereby depriving them of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Krummell and all other Class members to a cruel and unjust hardship in conscious disregard of Krummell's and all other Class member's rights, all for Defendants' own financial benefit, so as to justify an award of exemplary and punitive damages.

THIRD CAUSE OF ACTION

Fraud

(Plaintiff Krummell and all Class members against NACOLAH

and DOES 1 through 20)

41.    Plaintiff hereby incorporates by reference paragraphs 1 through 26, paragraphs 28 through 31 and paragraphs 36 through 38 of the Complaint as though the same were fully set forth herein.

42.    Defendant provided periodic Premium Due Notices to Krummell and all other policyholders which appeared to represent the scheduled premium payment amount necessary in order to maintain the Policy in good standing. Defendant's representations were false at the time they were made, and Defendant knew them to be false, because the stated quarterly premium payments did not provide sufficient funds to maintain the Policy in good standing. Defendant also knew that Krummell, and all other policyholder's similarly situated were elderly

and knew that in the event the Policy were to lapse it would be highly probable that Krummell and all others similarly situated would not qualify as insurable if subjected to the requirement of having to submit for reinstatement following an incident of lapse. Defendant knew, or in the exercise of reasonable care should have known, that the representations made in its Projections of Policy Value and periodic Premium Due Notices statements were false and/or misleading when made, given that the required premiums are based upon a mathematical calculation regularly performed by Defendant, utilizing computerized programs, the factors and assumptions for which are set.  These representations were made by Defendant with the intent to defraud Krummell and all others similarly situated.  That is, Defendant made the representations for the purpose of inducing its policyholders' reliance upon them to their detriment by paying the periodic premium payment amount indicated by Defendant in its periodic Premium Due Notices believing this to be the amount necessary to maintain their Policies in good standing.

43.    Krummell and all others similarly situated were unaware that Defendant's representations were untrue, and acted in reliance upon the truth of the representations in making the decision to make the periodic premium payments in reliance on Defendant's written false and misleading written correspondence. Krummell and all other policyholders' reliance on Defendant's written correspondence was reasonable as they had no reason to doubt the veracity of

representations made by Defendant in its Annual Projection of Policy Values and periodic Premium Due Notices. Defendant held itself out to its policyholders as a company with a tradition of producing quality insurance products, offering products providing protection oriented life insurance of superior value to the consumer. Defendants acted so as to encourage Krummell and the Class members to repose trust in it, and Defendants did stand in a position of trust as to Krummell and the Class members.

44. Defendant's conduct constituted fraud. Defendant deliberately and intentionally induced Krummell and all others similarly situated, through fraudulent misrepresentations and omissions, to rely on Defendant's misrepresentations and omissions thereby causing their Policies to lapse.

45. Defendant defrauded its policyholders of the money they had put aside for their Golden Years. Defendant misrepresented and omitted material facts in order to take thousands of dollars from an 81-year old man, and all other Class members similarly situated and insured beneficiaries of subclass D Class members with failing health and faculties leaving them with no life insurance. At the time of the misrepresentations and omissions, Defendant knew or should have known that it had no intention of fulfilling their promises and providing Krummell with the life insurance that Krummell had invested hundreds of thousands of dollars in.

46. As a direct and proximate result of Defendant's fraudulent conduct,

KRUMMELL V. NACOLAH COMPLAINT

Krummell and the Class members suffered damages, including amounts actually and reasonably expended in reliance upon the fraud, and amounts suffered by Krummell and all other Class members including but not limited to loss of use and enjoyment of their Policies and loss of benefits therefrom to the extent that such loss was caused by the fraud, in an amount to be determined at trial.

47.     The aforementioned conduct of Defendant was intentional, malicious, oppressive and despicable conduct carried out for the purpose of defrauding Krummell and all other class members in order to deprive them of their rights and their policies, justifying an award of exemplary and punitive damages.


FOURTH CAUSE OF ACTION

Negligent Misrepresentation

(Plaintiff Krummell and all Class members against NACOLAH

and DOES 1 through 20)

48.     Plaintiff hereby incorporates by reference paragraphs through 26, paragraphs 28 through 31 and paragraphs 36 through 38 of the Complaint as though the same were fully set forth herein.

49.     As set forth above, Defendant provided written periodic Premium Due Notices to Krummell and all other policyholders which purported to represent the premium payment amount necessary in order to maintain each Policy. Defendant's

representations were false at the time they were made, and Defendant knew them to be false, because the stated quarterly premium payments did not provide sufficient funds to maintain the Policy in good standing. Defendant also knew that Krummell, and all others similarly situated were elderly and knew that in the event the Policy were to lapse it would be highly probable that Krummell and the Class members would not qualify as insurable if subjected to the requirement of having to submit for reinstatement following an incident of lapse. Defendant knew, or in the exercise of reasonable care should have known, that the representations made in its Projections of Policy Value and periodic Premium Due Notices were false and/or misleading when made, in that the premium amounts required to maintain a Policy in good standing is determined by performing a mathematical calculation based upon a set of fixed factors regularly performed by Defendant utilizing its computerized programs.  These representations were made by Defendant with the intent to defraud Krummell and the Class members.  That is, Defendant made the representations for the purpose of inducing these policyholders to rely to each of their detriments by paying the stated premium payment amount indicated by Defendant in its periodic Premium Due Notices as the accurate amount due and necessary to maintain Plaintiffs' policies in good standing.  Krummell, and the Class members were unaware of the false and misleading nature of Defendant's written correspondence, and thereby made each periodic premium payment under

the belief they are making premium payments in an amount sufficient to maintain the Policies.

50.     At the time that Defendant made the misrepresentations, it knew or in the exercise of reasonable care should have known that they were not true. Defendant caused Krummell and all others similarly situated to rely upon their misrepresentations and thereby induce them to act in a manner that proximately caused the lapse and termination of their Policies.

51.     Krummell and all others similarly situated were unaware that Defendant's representations were untrue, and acted in reliance upon the truth of the representations in making the decision to make the periodic premium payments in the amount that he did. Krummell and all other policyholders reliance on Defendant's written correspondence was reasonable as they had no reason to doubt the veracity of representations made by Defendant in its Annual Projection of Policy Values and periodic Premium Due Notices.  Defendant held itself out to its policyholders as a company with a tradition of producing quality insurance products, offering products providing protection oriented life insurance of superior value to the consumer. Defendants acted so as to encourage Krummell and the Class members to repose trust in it, and Defendants did stand in a position of trust as to Krummell and the Class members.

52.     As a result of Krummell and all others similarly situated reliance on

Defendant's misrepresentations and omissions, Krummell and all other Class Members have suffered substantial damages.

53.    Defendant's conduct constituted negligence. Defendant negligently induced Krummell and the Class members, through its misrepresentations and omissions, to rely on Defendant's misrepresentations and omissions thereby causing their Policies to lapse.

54.    As a result of the foregoing, Defendant is guilty of negligent misrepresentation.

55.    As a direct and proximate result of the acts of Defendant as alleged herein, Krummell and all other Class members have suffered damages in an amount to be determined at trial.

FIFTH CAUSE OF ACTION

Violation of the Unfair Competition Law

(Plaintiff Krummell and all Class members against NACOLAH

and DOES 1 through 20)

56.    Plaintiff hereby incorporates by reference paragraphs through 26, paragraphs 28 through 31, paragraphs 36 through 38, paragraphs 42 through 45 and paragraphs 49 through 54 of the Complaint as though the same were fully set forth herein.

57.     Plaintiff brings this cause of action on behalf of Krummell and as a representative on behalf of the general public.

58.     California Business & Professions Code section 17200 et seq., the Unfair Competition Law (hereinafter the "UCL"), prohibits unfair competition, described as any "unlawful," "unfair," or "fraudulent" business act or practice.

59.     The UCL prohibits "unlawful" business practices and proscribes "anything that can properly be called a business practice and that at the same time is forbidden by law." People v. McKale, (1975) 25 Cal.3d 626, 634; Barquis v. Merchants Collection Ass'n, (1972) 7 Cal.3d 94, 113.

60.     The UCL prohibits "fraudulent" business practices. A business practice is fraudulent within the meaning of the UCL if "members of the public are likely to be deceived." Bank of the West v. Superior Court, (1992) 2 Cal.4th 1254, 1267; Committee on Children's Television v. General Foods Corp., (1983) 35 Cal.3d 197, 211.

61.     Plaintiff is informed and believes and thereon alleges that the conduct of NACOLAH and DOES 1-20 as alleged herein constitutes unlawful, unfair, and fraudulent business practices prohibited under the UCL and UCL law across the United States.

62.     Defendants' conduct was unlawful in that it violated the Elder Abuse Act. Moreover, Defendants' conduct was unlawful in that it violated California

Insurance Code § 790.03, which prohibits any person from (a) making any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce the policyholder to lapse, forfeit, or surrender his or her insurance.

63.     Defendants' conduct was unlawful in that it violated California Insurance Code § 781, which prohibits any person from making any misrepresentation to for the purpose of inducing or tending to induce a person to lapse, forfeit, or surrender his or her insurance.

64.     Defendant's conduct was unfair in that it did make misrepresentations to Krummell and all other Class members for the purpose of inducing or tending to induce these policyholders to lapse their insurance.

65.     Defendant's policies and practices as described above violate the following statutes, laws, and regulations, among others: (a) Civil Code § 1709; (b) Civil Code § 1710; (c) Civil Code § 1572; (d) common law fraud and/or; (3) common law negligent concealment/misrepresentation and, consequently constitutes an unlawful business act or practice within the meaning of the UCL.

66.     As a direct result of Defendant's policies and practices as described above, Defendant continue to receive and hold monies and property of Krummell and the Class members and other ill gotten and unlawful gains and profits from members of the general public, Krummell and Class members.

67.     Defendant's violations of the statutes, laws, and regulations as alleged herein are unlawful business practices done repeatedly over a significant period of time throughout California, and throughout the United States and in a systematic manner to the detriment of Krummell and all other Class members.

68.     The unfair and unlawful business acts and practices described herein conducted by NACOLAH present a continuing threat to Krummell, the members of the class and to the general public at large. Plaintiff is informed and believes that Defendants have engaged in such practices over a number of years and have failed to indicate, in any way, that they plan to cease such activities any time in the future.

69.     Pursuant to the UCL and pursuant to the equitable powers of this Court, Defendants should be preliminarily and permanently enjoined from their unfair and unlawful business acts and practices.

70.     Pursuant to the UCL and pursuant to the equitable powers of this Court, Defendants should be ordered to disgorge and to restore to Krummell and all Class members all funds and property Defendants retained by means of the unfair and unlawful business acts and practices alleged herein.

71.     As a direct and proximate result of the acts of Defendant as alleged herein, Krummell and all other Class members have suffered damages in an amount to be determined at trial.

KRUMMELL V. NACOLAH COMPLAINT

72.     Pursuant to the UCL Krummell and all Class members shall be entitled to recover three times the amount of the actual damages sustained thereby, and shall also be entitled to an award of reasonable attorney's fee together with the costs of suit.

SIXTH CAUSE OF ACTION

Violation of California Insurance Code § 781 – Twisting

(By Plaintiff Krummell and All Class members Against NACOLAH

and DOES 1 through 20)

73.     Plaintiff hereby incorporates by reference paragraphs through 26, paragraphs 28 through 31, paragraphs 36 through 38, paragraphs 42 through 45 and paragraphs 49 through 54 and paragraphs 57 through 68 of the Complaint as though the same fully set forth herein.

74.     As set forth above, Defendant provided written periodic Premium Due Notices to Krummell and all other policyholders which purported to represent the premium payment amount necessary in order to maintain each Policy. Defendant's representations were false at the time they were made, and Defendant knew them to be false, because the stated quarterly premium payments did not provide sufficient funds to maintain the Policy in good standing. Defendant also knew that Krummell, and all others similarly situated were elderly and knew that in the event

the Policy were to lapse it would be highly probable that Krummell and the Class members would not qualify as insurable if subjected to the requirement of having to submit for reinstatement following an incident of lapse. Defendant knew, or in the exercise of reasonable care should have known, that the representations made in its Projections of Policy Value and periodic Premium Due Notices were false and/or misleading when made, in that the premium amounts required to maintain a Policy in good standing is determined by performing a mathematical calculation based upon a set of fixed factors regularly performed by Defendant utilizing its computerized programs.  These representations were made by Defendant with the intent to defraud Krummell and the Class members.  That is, Defendant made the representations for the purpose of inducing these policyholders to rely to each of their detriments by paying the stated premium payment amount indicated by Defendant in its periodic Premium Due Notices as the accurate amount due and necessary to maintain Plaintiffs' policies in good standing.  Krummell, and the Class members were unaware of the false and misleading nature of Defendant's written correspondence, and thereby made each periodic premium payment under the belief they are making premium payments in an amount sufficient to maintain the Policies.

75.    Defendant made the misleading confusing and ambiguous representations as alleged herein above to Krummell and each of the putative class

**KRUMMELL V. NACOLAH COMPLAINT**

members, for the purpose of inducing or tending to induce Krummell and each of the putative class members to lapse, forfeit, change or surrender their insurance in violation of California Insurance Code § 781 which prohibits any person from making any representations for the purpose of inducing or tending to induce a person to lapse, forfeit, change or surrender their insurance, whether on a temporary or permanent plan.

76.    As a result of the foregoing, Defendant is guilty of twisting.

77.    As a direct and proximate result of the acts of Defendant as alleged herein, Krummell and all other Class members have each suffered damages in excess of Ten Thousand Dollars that actual amount of which to be determined at trial.

78.    Pursuant to California Insurance Code § 782 Defendant is liable to Krummell and each of the putative class members to a fine in an amount not exceeding three times the amount of the loss suffered by Krummell and each of the putative class members.

SEVENTH CAUSE OF ACTION

Constructive Trust

(By Plaintiff Krummell and All Class members Against NACOLAH

And DOES 1 through 20)

79.     Plaintiff hereby incorporates by reference paragraphs through 26, paragraphs 28 through 31, paragraphs 36 through 38, paragraphs 42 through 45 and paragraphs 49 through 54, paragraphs 57 through 68 and paragraphs 74 through 77 of the Complaint as though the same were fully set forth herein.

80.     Defendants stood in a position of trust and confidence to Krummell and each of its policyholders for which they owed a fiduciary-like duty to Krummell and each of its policyholders.  Defendants breached this duty when they engaged in the aforementioned acts alleged herein, including but not limited to fraud, Elder abuse and unfair business practices.

81.     Krummell and all other policyholders similarly situated paid all premium payments as represented by Defendants to be sufficient to acquire and maintain their Policies in full force in reliance of Defendant's fraudulent misrepresentations and omissions.

82.     As a direct and proximate result of Defendants fraudulent and other wrongful conduct as alleged herein above, Defendant unlawfully acquired property that rightfully belongs to Krummell and all other Class members including but not limited to their Policies and benefits deriving there from.

83.     As a direct and proximate result of Defendants fraudulent and other wrongful conduct as alleged herein Krummell and all other Class members are entitled to a constructive trust whereby, Defendant holds only bare legal title to

said Policies and all other benefits deriving there from as trustee, to be held in trust

for the benefit of Krummell and all other Class members.

EIGHTH CAUSE OF ACTION

Constructive Fraud

(By Plaintiff Krummell and All Class members Against NACOLAH

and DOES 1 through 20)

84.    Plaintiff hereby incorporates by reference paragraphs through 26, paragraphs 28 through 31, paragraphs 36 through 38, paragraphs 42 through 45 and paragraphs 49 through 54, paragraphs 57 through 68 and paragraphs 74 through 77 of the Complaint as though the same were fully set forth herein.

85.    Defendants and each of them owed a fiduciary like duty to Plaintiff and all others similarly situated in that Plaintiff's reposed trust and confidence in the integrity and fidelity of Defendants and each of them in administering these life insurance Policies in good faith and with the utmost honesty and good faith.

86.    Defendants and each of them breached this duty when Defendant provided periodic misleading confusing and ambiguous Premium Due Notices to Krummell and all other policyholders which appeared to represent the scheduled premium payment amount necessary in order to maintain the Policy in good standing. Defendant's representations were false at the time they were made, and Defendant knew them to be false, because the stated quarterly premium payments

did not provide sufficient funds to maintain the Policy in good standing. Defendant also knew that Krummell, and all other policyholder's similarly situated were elderly and knew that in the event the Policy were to lapse it would be highly probable that Krummell and all others similarly situated would not qualify as insurable if subjected to the requirement of having to submit for reinstatement following an incident of lapse. Defendant knew, or in the exercise of reasonable care should have known, that the representations made in its Projections of Policy Value and periodic Premium Due Notices statements were false and/or misleading when made, given that the required premiums are based upon a mathematical calculation regularly performed by Defendant, utilizing computerized programs, the factors and assumptions for which are set.  These representations were made by Defendant with the intent to induce Krummell and all others similarly situated reliance upon them to their detriment by paying the periodic premium payment amount indicated by Defendant in its periodic Premium Due Notices believing this to be the amount necessary to maintain their Policies in good standing. Defendants' actions were designed to cause Krummell and each of the putative class members to lapse, forfeit, change or otherwise surrender their insurance.

87.    At the time that Defendant made the misrepresentations, it knew or in the exercise of reasonable care should have known that they were not true. Defendant caused Krummell and all others similarly situated to rely upon their

misrepresentations and thereby induce them to act in a manner that proximately caused the lapse and termination of their Policies.

88.    Krummell and all others similarly situated were unaware that Defendant's representations were untrue, and acted in reliance upon the truth of the representations in making the decision to make the periodic premium payments in the amount that he did. Krummell and all other policyholders reliance on Defendant's written correspondence was reasonable as they had no reason to doubt the veracity of representations made by Defendant in its Annual Projection of Policy Values and periodic Premium Due Notices.  Defendant held itself out to its policyholders as a company with a tradition of producing quality insurance products, offering products providing protection oriented life insurance of superior value to the consumer. Defendants acted so as to encourage Krummell and the Class members to repose trust in it, and Defendants did stand in a position of trust as to Krummell and the Class members.

89.    As a result of Krummell and all others similarly situated reliance on Defendant's misrepresentations and omissions, Krummell and all other Class Members have suffered substantial damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays judgment against defendants, and each of them, as follows:

Under the FIRST CAUSE OF ACTION

      1.     Compensatory damages in an amount to be determined at trial;

      2.     Attorney's fees and costs pursuant to <u>Welfare and Institutions Code §</u> <u>15657</u>;

      3.     Exemplary damages in an amount to be determined at trial;

Under the SECOND CAUSE OF ACTION

      4.     Compensatory damages in an amount to be determined at trial;

      5.     Exemplary damages in an amount to be determined at trial;

Under the THIRD CAUSE OF ACTION

      6.     Compensatory damages in an amount to be determined at trial;

      7.     Exemplary damages in an amount to be determined at trial;

Under the FOURTH CAUSE OF ACTION

      8.     Compensatory damages in an amount to be determined at trial;

Under the FIFTH CAUSE OF ACTION

      9.     Compensatory damages in an amount to be determined at trial;

      10.    An order Defendant to discontinue the unfair, fraudulent and unlawful practices as alleged herein;

      11.    An order that Defendant re-instate the Policies of Krummell and all other persons similarly situated which lapsed by means of the unfair and unlawful business acts and practices alleged herein;

12.     An order that Defendant be disgorged of all profits in an amount according to proof at time of trial;

13.     An award of reasonable attorney's fees and costs

Under the SIXTH CAUSE OF ACTION

14.     Compensatory damages in an amount to be determined at trial;

15.     Civil fines pursuant to Cal Insurance Code section 782

16.     Exemplary damages in an amount to be determined at trial;

Under the SEVENTH CAUSE OF ACTION

17.     An order that Defendant holds title to the Policies of Krummell and all other Class members wrongfully lapsed and the benefits deriving there from, in its capacity as trustee, for the benefit of Krummell and all Class members. Defendant holds only bare legal title to said Policies and all other benefits deriving there from as trustee, to be held in trust for the benefit of Krummell and all other Class members.

Under the EIGHTH CAUSE OF ACTION

18.     Compensatory damages in an amount to be determined at trial;

19      Exemplary damages in an amount to be determined at trial;

Under ALL CAUSES OF ACTION

20.     Prejudgment Interest as allowed by law;

21.     For costs of suit herein incurred; and

22.   For such other and further relief as the court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues stated herein, and all

issues so triable

DATED: March _____, 2008

                                            LAW OFFICES OF LARRY A. SACKEY
                                            HORN ALYWARD & BANDY, LLC
                                            BREMAN LAW OFFICES

                                            By:_____
                                                LARRY A. SACKEY, Esq
                                                  Attorney for Plaintiff, Christopher
                                                Krummell, in his capacity as
                                                guardian ad litem for John D.
                                                Krummell, for John D.Krummell
                                                and all others similarly situated.



**NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE**
Home Office: 525 West Van Buren - Chicago, IL 60607
Administrative Office: PO Box 5088, Sioux Falls, SD 57117-5088

A Policy Services representative
will be happy to assist you.
(877) 872-0757
(605) 335-3621 - Fax

**PREMIUM DUE NOTICE**

JOHN D KRUMMELL

| | | |
|---|---|---|
| **POLICY#** 7201 | **PREMIUM DUE DATE** | 12-12-06 |
| **INSURED(S)** JOHN D KRUMMELL | **MONTHS:** | 03 |
| | **PREMIUM:** | $ 3,290.31 |
| | **LOAN INTEREST:** | .00 |
| F324000229 | **TOTAL DUE:** | $ 3,290.31 |

- Send correspondence or payments for amounts other than that billed to our Policy Accounting Department at the Administrative Office address.
- Send overnight mail to: One Midland Plaza, Sioux Falls, SD 57193.
- Please refer to the reverse side for important information.

250002150763240002290003290310

Checks must be drawn on a United States bank or a United States branch of an international bank.

---

**PLEASE RETAIN TOP PORTION FOR YOUR RECORDS**



NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE
Home Office: 525 West Van Buren - Chicago, IL 60607
Administrative Office: PO Box 5088, Sioux Falls, SD 57117-5088
Telephone Number: (877) 872-0757 Fax Number: (605) 335-3621

| | | |
|---|---|---|
| POLICY: 7201 | |
| JOHN D KRUMMELL | |
| PREMIUM DUE DATE | 12-12-06 |
| MONTHS: | 03 |
| PREMIUM: | $ 3,290.31 |
| INTEREST: | .00 |
| TOTAL DUE | $ 3,290.31 |
| AMOUNT ENCLOSED: $ | |
| F 000229 | |

*Make check payable to NACOLAH .
*Please write policy number on your check.
*Do not fold, staple or clip your check to the payment stub.
*Send correspondence to the Administrative Office address.
*Use enclosed envelope.
*Send overnight mail to: One Midland Plaza Sioux Falls, SD 57193
*Checks must be drawn on a United States bank or a United States branch of an international bank.

**New Address?**
Show address change/correction below.

Address _____

Address _____

City _____ State _____ Zip Code _____

( ) _____
Area Code      Telephone #

Signature _____

Other policy numbers to which this change applies _____

**PLEASE INCLUDE THIS PORTION WITH YOUR PAYMENT**

Krummell v. NACOLAH
EXHIBIT A
Page 1 of 1

250002150763240002290003290310

 **North American Company**
for Life and Health Insurance

Home Office: 525 West Van Buren • Chicago, IL 60607
dministrative Office: P.O.Box 5088·Sioux Falls, SD 57117-5088
Telephone: (605) 373-8560 · Fax (605) 335-3621

JOHN D KRUMMELL

December 14, 2006

```
******************************
*  GRACE PERIOD NOTICE  *
*    ACT IMMEDIATELY    *
******************************
```

**Insured(s):**  John D Krummell

**Policy No.** ████████7201
**Planned Payment:**     $3,290.31
**Mode:** Quarterly

**Last Payment:**     $3,290.31
**Date Received:**     12-14-06
**Loan Balance:**

Dear Mr. Krummell:

Our records indicate that your policy entered its grace period on 12-12-06 and is in danger of terminating.

To retain your valuable coverage, please send the greater of the planned payment shown above or the amount indicated in the next paragraph to our office now. If we are reflecting a recent payment above, please contact your agent or our office to discuss the reason for this notice.

To keep your policy in force for the month beginning  12-12-06 , you must remit     $1,128.17. This payment must be made during the insured's lifetime. *Please remember that sending this minimum payment will provide coverage for this month only and will not prevent your policy from entering the 61 day grace period again next month, perhaps for a different amount. This minimum payment will not provide for the planned long term performance of your policy.*

Your policy remains an excellent way to provide for your insurance needs, plus a means of earning competitive, tax-deferred interest on your cash values. If the policy terminates, reinstatement subject to full medical underwriting will be necessary.

Act now to maintain the benefit for which this policy was intended. For answers to your questions or assistance in determining a new planned premium amount for the long term performance of your policy, you may call our Client Services representatives at the above number.

Customer Services

cc:

No. 99999

Writing Agent: Tom H. Doyle

Krummell v. NACOLAH
EXHIBIT B
Page 1 of 1

FILE COPY          FXDOC          No. 0000A66017     T
                                   AU-TOC

PAGE:   1



PROJECTED POLICY VALUES

POLICY STATUS AS OF REQUEST DATE

REQUEST DATE: MAY 12, 2006
REQUEST:   1

INSURED: JOHN D KRUMMELL
PLAN: CREATIVE MAX
SPECIAL RATED: NO
POLICY NUMBER: ███7201
ISSUE DATE: MAY 12, 1987
ISSUE AGE/SEX: 60  MALE
PAID TO DATE: SEPTEMBER 12, 2006
BILLED TO DATE: SEPTEMBER 12, 2006

DEATH BENEFIT OPTION: B
CURRENT INTEREST: 5.00%
GUARANTEED INTEREST: 5.50%
PREMIUM FREQUENCY: QUARTERLY
ANNUAL PREMIUM: $13161.24
SPECIFIED AMOUNT: $500,000

BENEFITS AND RIDERS                    AMOUNT
---------------------                 --------

CHANGES IN ASSUMPTIONS

REQUESTED SOLVE:
----------------
CASH VALUE
----------

| PROJECTED INTEREST RATE | TARGET CASH VALUE | PROJECTED SPECIFIED AMOUNT | PROJECTED PREMIUM | PROJECTED MODE | PROJECTED STOP DATE | PROJECTED STOP AGE |
|---|---|---|---|---|---|---|
| .00% | 00.00 | 00.00 | 13,161.24 | ANNUAL | 05/12/22 | 99 |

OTHER CHANGES IN ASSUMPTIONS
REQUESTED CHANGES IN ASSUMPTIONS

| ASSUMPTION TYPE | CHANGE VALUE TO | AS OF |
|---|---|---|
| NO CHANGES | | 06/12/06 |

COMPANY 500  NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE
HOME OFFICE: 525 W. VAN BUREN CHICAGO IL. 60607  (877) 872-0757
ADMINISTRATIVE OFFICE: PO BOX 5088, SIOUX FALLS, SD. 57117-5088
STATEMENT DATE 05-30-06
FLEXIBLE PREMIUM ADJUSTABLE LIFE PLAN
SUMMARY OF POLICY ACTIVITY FOR YEAR ENDING    MAY 12, 2006
POLICY NUMBER: ████7201
POLICY DATE: 05/12/87

PAGE  1

JOHN D KRUMMELL
INSURED

AGENCY
99999

JOHN D KRUMMELL

BENEFITS
SPECIFIED AMOUNT:          500,000.00

SURRENDER VALUE* AS OF              MAY 12, 2005 :          854.43
SURRENDER VALUE# AS OF              MAY 12, 2006 :            0.00
MONTHLY RATE FOR PRIMARY INSURED FOR NEXT YEAR IS  5.412935 PER THOUSAND.

| MONTH ENDING | PREMIUMS RECEIVED | EXPENSES CHARGED** | NEEDED TO REPAY LOAN | INTEREST CREDITED | ACCUMULATION VALUE | CASH VALUE*** | DEATH BENEFIT**** |
|---|---|---|---|---|---|---|---|
| 06/12/05 | 0.00 | 1,765.04 | | 0.00 | 0.00 | 0.00 | 500,000.00 |
| 07/12/05 | 3,290.31 | 1,766.97 | | 0.00 | 412.73 | 412.73 | 500,000.00 |
| 08/12/05 | 0.00 | 1,765.75 | | 0.00 | 0.00 | 0.00 | 500,000.00 |
| 09/12/05 | 3,290.31 | 1,766.97 | | 0.00 | 170.32 | 170.32 | 500,000.00 |
| 10/12/05 | 0.00 | 1,766.46 | | 0.00 | 0.00 | 0.00 | 500,000.00 |
| 11/12/05 | 3,290.31 | 1,766.97 | | 0.00 | 0.00 | 0.00 | 500,000.00 |
| 12/12/05 | 3,290.31 | 1,766.97 | | 0.00 | 1,450.54 | 1,450.54 | 500,000.00 |
| 01/12/06 | 0.00 | 1,762.70 | | 0.00 | 0.00 | 0.00 | 500,000.00 |
| 02/12/06 | 3,290.31 | 1,766.97 | | 0.00 | 1,211.18 | 1,211.18 | 500,000.00 |
| 03/12/06 | 0.00 | 1,763.40 | | 0.00 | 0.00 | 0.00 | 500,000.00 |
| 04/12/06 | 3,290.31 | 1,766.97 | | 0.00 | 971.12 | 971.12 | 500,000.00 |
| 05/12/06 | 0.00 | 1,761.10 | | 0.00 | 0.00 | 0.00 | 500,000.00 |
| | 19,741.86 | 21,189.27 | | 0.00 | | | |

COMPANY 500          NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE
HOME OFFICE: 525 W. VAN BUREN CHICAGO, IL. 60607
ADMINISTRATIVE OFFICE: PO BOX 5088, SIOUX FALLS, SD. 57117-5088   (877) 872-0757

PAGE  3

STATEMENT DATE 05-30-06
FLEXIBLE PREMIUM ADJUSTABLE LIFE PLAN
SUMMARY OF POLICY ACTIVITY FOR YEAR ENDING     MAY 12, 2006
POLICY NUMBER: ▇▇▇▇7201
POLICY DATE:  05/12/87

INTEREST CREDITING*

FROM 05/12/05 TO 05/12/06, INTEREST WAS CREDITED AT A RATE OF   5.50%.
THE RATES SHOWN ARE EFFECTIVE ANNUAL RATES. INTEREST IS CREDITED MONTHLY.

*NOTE:  ANY PORTION OF THE ACCUMULATION VALUE SECURING OUTSTANDING INDEBTEDNESS IS
CREDITED INTEREST AT AN EFFECTIVE ANNUAL RATE OF   5.00%.

GUIDELINE PREMIUM COMPLIANCE INFORMATION:
THE CONTRACT IS IN COMPLIANCE WITH GUIDELINE PREMIUM RULES.
THE GUIDELINE LEVEL PREMIUM AMOUNT IS.........    18,453.00
THE GUIDELINE SINGLE PREMIUM AMOUNT IS.......    195,931.14
THE MAXIMUM ACCEPTABLE PAYMENT NEXT YEAR IS...    188,264.28**

**IF THE AMOUNT SHOWN EXCEEDS $25,000.00, THE COMPANY MAY EXERCISE THE RIGHT RETAINED IN
THE POLICY TO LIMIT UNSCHEDULED PREMIUM PAYMENTS.

**North American Company**
**for Life and Health Insurance**

Home Office: 525 West Van Buren · Chicago, IL 60607
Administrative Office: P.O.Box 5088·Sioux Falls, SD 57117-5088
Telephone: (605) 373-8560 · Fax (605) 335-3621

RECEIVED

FEB 20 2007

ADVANCE STORAGE PRODUCTS

JOHN D KRUMMELL

February 15, 2007

| | |
|---|---|
| Insured(s): | John D Krummell |
| Policy No. | ██7201 |
| Premium: | $3,290.31 |
| Frequency: | Quarterly |
| Loan Balance : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### NOTICE OF LAPSE EFFECTIVE 12-12-06

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Dear Mr. Krummell:

The grace period your policy provides has expired and your policy has terminated. Most often a policy lapses due to an oversight, seldom by intention.

We will consider reinstating the valuable insurance protection your policy provided. Please contact us at the above number to request a reinstatement application. Reinstatement is conditioned upon our approval of your evidence of insurability.

Customer Services

Krummell v. NACOLAH
EXHIBIT D
Writin Page 4 of 1 Tom H. Doyle