Larry A. Sackey, Esq. (Bar No. 54474)
**Law Office of Larry A. Sackey**
11500 W. Olympic Blvd., Suite 550
Los Angeles, California 90064
(310) 575-4444
Facsimile: (310) 575-4520
E-mail: lsackey@sackeylaw.com

Robert Horn, Esq. (*admitted pro hac vice*)
Joe Kronawitter, Esq. (*admitted pro hac vice*)
**Horn Aylward & Bandy, LLC**
2600 Grand Boulevard, Suite 1100
Kansas City, MO 64108
rhorn@hab-law.com, jkronawitter@hab-law.com

Teresa K. Breman, Esq. (Bar No. 222298)
**Breman Law Offices**
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
(310) 525-3520
Facsimile (310) 525-3543
E-mail: tbreman@bremanlaw.com

Attorneys for Plaintiffs, JOHN V. R. KRUMMELL and MATTHEW W. T. KRUMMELL as Co-Trustees of the Krummell Trust Estate on behalf of themselves and all others similarly situated.

# THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN V.R. KRUMMELL and MATTHEW W.T. KRUMMELL, in their capacities as Co-Trustees of the Trust Estate of JOHN D. KRUMMELL, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, an Iowa Corporation and DOES 1 through 20,<br><br>　　　　　Defendant | **No.: CV08-01509** CAS (FMOx)<br>*Honorable Christina A. Snyder*<br><br>**UNOPPOSED APPLICATION FOR AWARD OF ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE INCENTIVE AWARDS**<br><br>Hearing Date: February 14, 2011<br>Time:　　　　10:00 a.m.<br>Courtroom:　　"5"<br><br>Complaint filed: March 6, 2008 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

I. INTRODUCTION ..............................................................................1

II. OVERVIEW OF SETTLEMENT......................................................2

III. CALCULATION OF ATTORNEYS' FEES .....................................4

    A. *A LODESTAR ANALYSIS CONFIRMS THE REASONABLENESS OF THE REQUESTED FEE* ........................................................................5

    B. *THE NINTH CIRCUIT'S FAIRNESS FACTORS WEIGH IN FAVOR OF THE REQUESTED FEE* ........................................................................6

        1. The Results Achieved ................................................................7

        2. The Risk of Litigation ................................................................8

        3. The Contingent Nature of the Fee and the Financial Burden Carried by the Plaintiffs ..............................................8

        4. The Skill Required and Quality of Work.................................9

IV. THE REQUESTED SERVICE AWARDS ARE REASONABLE......................................................................................10

V. CONCLUSION ..................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Cook v. Niedert*,
   142 F.3d 1004, (7th Cir. 1998) ................................................................................10

*Fulford v. Logitech, Inc.*,
   No. 08-cv-02041, 2010 U.S. Dist., 2010 WL 807448, (N.D. Cal. 2010) .............10

*Hensley v. Eckerhart,*
   461 U.S. 424, (1983) ........................................................................................2, 7

*Hopson v. Hanesbrands Inc.,*
   No. CV-08-0844, 2009 U.S. Dist., 2009 WL 928133, (N.D. Cal. 2009) ...............6

*In Lo Re v. Chase Manhattan Corp.*,
   1979 U.S. Dist. LEXIS 12210, 19 FEP Cas. (BNA) 1366 (S.D. N.Y. 1979).......10

*In re Daou Syss. Sec. Litig.*,
   No. 98-CV-1537, 2008, U.S. Dist. 2008 WL 2899726, (S.D. Cal. 2008) ..............5

*In re M.D.C. Holdings Sec. Litig.*,
   No. CV89-0090,
   1990 U.S. Dist, 1990 WL 454747, (S.D. Cal. 1990) .............................................9

*In re Merck & Co., Inc. Vytorin Erisa Litig.,*
   No. 08-285, U.S. Dist., 2010 WL 547613, (D. N.J. 2010) ....................................5

*In re Union Carbide,*
   724 F.Supp. 160, (S.D.N.Y. 1989) .......................................................................5

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291, (9th Cir. 1994) ...............................................................................8

*In re: H&R Block Inc., Express IRA Marketing Litigation*,
   MDL Dkt. No. 1786, No. 4:06-md-01786, Order, Doc. 232 .................................6

*LeBlanc-Sternberg v. Fletcher,*
   143 F.3d 748, (2d Cir. 1998) ................................................................................5

*Missouri v. Jenkins,*
   491 U.S. 274, (1989)..................................................................................................5
*Staton v. Boeing,*
   327 F.3d 938 (9th Cir. 2003)...................................................................................10
*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043, (9th Cir. 2002).............................................................................5, 7
*Woo v. Home Loan Group, L.P.*,
   No. 07-CV-202,  2008 U.S. Dist., 2008 WL 3925854, (S.D. Cal. 2008) .............10

**STATUTES**

Federal Rule of Civil Procedure 23(b)(2) ...................................................................3

**TREATISES**

*Newberg on Class Actions*, 3rd Ed., §14.7 ................................................................5

Richard Posner, *Economic Analysis of Law* §21.9, (3d ed. 1986).............................8

Plaintiffs John V. R. Krummell and Matthew W. T. Krummell as Co-Trustees of the Krummell Trust Estate (hereinafter collectively referred to as the "Class Plaintiffs"), by and through the undersigned Class Counsel, submit the following Application for Approval of Attorneys' Fees, Costs and Class Representative Incentive Awards.

I.   **INTRODUCTION**

On August 30, 2010, this Court entered its order (Doc. #94) ("Order") preliminarily approving the parties' class settlement and certifying for settlement purposes only a class[1] consisting of two distinct subclasses: (1) the Lapsed Coverage Subclass,[2] and (2) the Good Standing Subclass (collectively referred to as the "Class Members").  Through this litigation, Class Counsel achieved an excellent result for both Subclasses.  The proposed settlement was consummated after thorough and aggressive litigation that involved extensive written discovery, voluminous document production, numerous depositions, motion practice and extensive settlement discussions.  Perhaps most indicative of the result obtained by Class Counsel is the undeniable fact that, unlike many class action settlements, there have been **no objections thus far,** to the proposed class settlement or to the

---

[1] "Class Member" does not include a person or entity (a) who has previously released North American from the claims asserted in the Action; (b) whose rights and claims respecting the Class Policy generally, or the claims of whom that have been asserted in this Action, have been finally adjudicated in a court of law; (c) who is or was a member of the Board of Directors or an officer of North American at any time during the Class Period, as well as any affiliate, legal representative, attorney, successor, or assign of North American; or (d) any judge, justice, or judicial official presiding over the Action and any member of the staff or immediate family of such judge, justice or official; and (e) any persons hired to administer the terms of the Settlement Agreement.

[2] All capitalized terms herein are defined as set forth in the parties' Settlement Agreement, attached to Plaintiffs' Motion for Preliminary Approval (Doc. #90) as Exhibit 1.

attorneys' fees and incentive awards sought herein.[3]

As compensation for their work in prosecuting this complex class action on a fully contingent basis, with no assurance of any payment or outcome, and obtaining a settlement that favorably resolves this action for the Class, Class Counsel seek a total of $930,000.00 in combined attorneys' fees, expenses and incentive awards, of which $25,000 is requested to be apportioned to Plaintiffs in the form of an incentive award. North American has agreed to pay such sums (subject to this Court's approval) and does not object to the relief sought herein.[4] More importantly, any award of attorney's fees, expenses and incentive awards will not reduce the settlement benefits being provided to the Class.

The substantial and identifiable benefits obtained by Class Counsel for the Class Members, in addition to the other grounds set forth below, warrants an award of attorney's fees and expenses to Plaintiffs, and incentive awards.

## II. **OVERVIEW OF SETTLEMENT**

This case stems from North American's procedures related to the notices it provides to policyholders. Plaintiffs contended that North American tended to induce its flexible premium adjustable life insurance policyholders to default in premium payments through North American's purported use of allegedly ambiguous and misleading written communications, and North American's alleged failure to adequately notify its policyholders of the true status of the policies.

---

[3] More than 14,716 Class member notices were mailed on November 1, 2010. Under the terms of the Settlement, all Class member objections or opt-outs must be filed by December 31, 2010. *See,* Declaration of Settlement Administrator, Doc. #98.

[4] The Supreme Court has stated that consensual resolution of attorneys' fee issues is the *ideal* toward which litigants should strive. *See, e.g.*, *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). Moreover, where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference. *Id.* (holding that an agreed-to fee is an ideal situation because "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

Plaintiffs allege that North American's premium notices, grace notices, annual statements and other communications and related omissions caused the inadvertent lapse of coverage under the policies. North American contended that its notice procedures were efficient, effective and proper at all times, and did not cause the inadvertent lapse of any insurance policy.[5]

With respect to the Good Standing Subclass (i.e., current North American policyholders), which consists of more than 150,000 class members, through this Settlement North American agrees to change the language in its planned premium notices and grace notices. These changes will address deficiencies alleged by Plaintiffs to have existed in North American's written communications to Good Standing Subclass members which tended to create confusion and induce the unintentional lapse of valuable insurance policies, thereby minimizing the risk of such damages occurring in the future and better insuring their policies will remain in force. While, by definition, Good Standing Subclass Members have not yet been damaged by the alleged deficiencies in the notices the notices as they previously existed created an unreasonable risk of lapse and therefore the Good Standing Class Members are substantially benefited by these changes. The nature of this relief provided for the Good Standing Subclass fits that subclass within the framework of Rule 23(b)(2). Concomitantly, <u>Good Standing Subclass Members are not releasing any claims under this Settlement</u>. In short, Good Standing Subclass Members will receive revised, improved notices as a result of Plaintiffs' efforts without forgoing any claims they may currently have.

With respect to Lapsed Coverage Subclass Members (i.e., former North American policyholders), North American has agreed to liberalize its reinstatement

---

[5] North American contests and continues to deny each and every claim and contention alleged by Plaintiffs in the Action, and it has asserted numerous defenses thereto. North American also denies and continues to deny any wrongdoing or legal liability arising out of any conduct alleged in the Action and is prepared to defend the Action. In addition, North American contends that a trial of Plaintiffs' claim would be unmanageable.

criteria providing Lapsed Coverage Settlement Subclass Members with an extension of the period during which they may apply for reinstatement of their Qualifying Policies. The Settlement provides certain Monetary Benefits for those Lapsed Coverage Settlement Subclass Members that satisfy various conditions and who otherwise but for the efforts of class counsel had lost all benefits for premiums paid under their lapsed policies. Under the Settlement, if a Lapsed Coverage Settlement Class Member qualifies for Monetary Benefits, they will receive the greater of (i) a refund of 1% of the premiums they paid as to the relevant policy or (ii) 5% of the excess of the premiums they paid as to the relevant policy over the hypothetical cost of corresponding death benefit coverage if coverage had been obtained under a term life insurance policy based on rates set forth in the Settlement Agreement.

### III.  CALCULATION OF ATTORNEYS' FEES

Class Counsel spent substantial time litigating this case and obtaining the Settlement. Class Counsel participated in fifteen depositions, reviewed thousands of documents produced by North American, prepared and propounded substantial written discovery, answered substantial written discovery from North American, reviewed and produced voluminous documents requested by North American, reviewed voluminous discovery responses and objections from North American, located, retained and deposed several expert witnesses, jointly developed and engaged in a detailed putative class survey procedure and engaged in substantive briefing and motion practice that included preparation of a voluminous, detailed motion to certify (Doc. #58).

In recognition of this work, Class Counsel request an aggregate award of $930,000 in attorney's fees, expenses and incentive awards. Unlike many class actions, however, this fee request is not premised on a common fund of money to be paid by the defendant. Rather, Class Counsel request a fee award based on the

much simpler and more straight-forward "lodestar" method.

### A. A Lodestar Analysis Confirms The Reasonableness Of The Requested Fee

Utilization of a "lodestar" analysis to determine a reasonable attorney fee is well-recognized.[6] "The lodestar analysis is performed by 'multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys.'" *In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. 08-285, U.S. Dist., 2010 WL 547613, at *12 (D. N.J. Feb. 9, 2010). The lodestar multiplier is then calculated, "which is equal to the proposed fee award divided by the lodestar (i.e., the product of the total hours and the blended billing rate)." *Id.; accord Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). Regarding the first step in the lodestar calculation, to compensate for the long delay Class Counsel encountered in receiving any compensation for their work in this case (more than three years), it is appropriate to use Class Counsel's current fee rates in calculating the lodestar. *See Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989).[7] It is also appropriate to include paralegal and law clerk time in calculating the lodestar.[8]

Here, Class Counsel are not requesting a multiplier. Rather, Class Counsel's negotiated fee request is <u>below</u> their lodestar amount. As set forth in the Declarations of Class Counsel attached hereto as Exhibits "A" through "C",[9]

---

[6] *See In re Daou Syss. Sec. Litig.*, No. 98-CV-1537, 2008, U.S. Dist. 2008 WL 2899726, at *1 (S.D. Cal. July 24, 2008); *Newberg on Class Actions*, 3rd Ed., §14.7.

[7] *See also LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment").

[8] *Missouri,* 491 U.S. at 289; *In re Union Carbide,* 724 F.Supp. 160, 163-64 (S.D.N.Y. 1989).

[9] Additional declarations were submitted by Class Counsel in conjunction with Plaintiffs' Motion for Class Certification (Doc. #58).

Class Counsel collectively spent more than 3,000 hours[10] pursuing and prosecuting the claims of the Plaintiffs and the Class members. The billing rates of Class Counsel, ranging from $500 to $325 per hour, are in-line with accepted billing rates in complex litigation and consumer class actions. Two of the Class Counsel practice law in the greater Los Angeles area where hourly rates of $500 per hour are common in this type of litigation.[11] However, even using a more modest rate of $375.00[12] per hour, the "lodestar" is well over the requested fee amount.

In addition to the substantial time reflected above, Class Counsel have also incurred substantial expense pursuing this case. As noted in the attached Declarations, Class Counsel have incurred $215,536.41 in expenses related to this litigation, including travel expenses, deposition costs and expert witness compensation. These expenses do not include the many ancillary expenses Class Counsel have incurred, such as meal expenses, cab fares, etc.

### B. The Ninth Circuit's Fairness Factors Weigh In Favor Of The Requested Fee

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an attorneys fee award is reasonable which include: (1) the

---

[10] Time and expense records are filed herewith attached to Class Counsel's Declarations.

[11] The effective rates to be realized by Class Counsel here fall far below rates approved in consumer class action litigation in federal courts. *See Hopson v. Hanesbrands Inc.,* No. CV-08-0844, 2009 U.S. Dist., 2009 WL 928133, at *12 (N.D. Cal. April 3, 2009) (approving billing rates ranging from $675 to $135 an hour in wage and hour litigation); *In re: H&R Block Inc., Express IRA Marketing Litigation*, MDL Dkt. No. 1786, No. 4:06-md-01786, Order, Doc. 232, Order Granting Plaintiffs' Motion for Approval of Attorneys' Fees, Service Fees, and Reimbursement of Expenses (W.D. Mo. May 17, 2010) (finding reasonable billing rates that varied from $425 to $750 an hour for partners, $225 to $485 for associates, and $75 to $290 for professional support staff).

[12] According to a recent Altman Weil survey of law firms from around the country, $375 an hour is a median hourly rate for equity partners in larger law firms. Plaintiffs' Counsel respectfully submits that this hourly rate is somewhat low for this type of litigation, from a plaintiffs' counsel perspective. See, http://www.altmanweil.com.

results achieved; (2) the risk of litigation; (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *See Vizcaino*, 290 F.3d at 1048-50.  Although these factors are typically only utilized in considering a percentage-of-the-common-fund fee request, their application to this case only highlights the reasonableness of Class Counsel's request.

### 1. The Results Achieved

The Supreme Court has said that in an award of attorney's fees the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  Certainly, the results obtained on behalf of the Class in this case do not warrant a departure from what has been requested.  To the contrary, more than 150,000 Good Standing Subclass Members have been substantially benefitted as a result of the efforts of Class Counsel.  The benefits to those Class members are designed to prevent future inadvertent policy lapse, which has obvious value. Although the tangible value of the Good Standing Subclass benefits are somewhat difficult to quantify, the parties' have agreed that the value of such benefits is at least $3,000,000.[13]  And, those benefits are not reduced or affected in any many by payment for attorney's fees, service awards, and settlement administration.

Further, in excess of 14,700 Lapsed Subclass Members will have the right to apply for reinstatement of their lapsed policies and, if no longer insurable or if a Lapsed Subclass member now falls within a higher rating class, they may qualify for Monetary Benefits not otherwise available.  Certainly, those results have tangible value.  In all respects, given the difficulty presented by this case,[14] Class Counsel have achieved substantial, beneficial results for the Class.

---

[13] *See* Settlement Agreement, pg. 42, ¶ 10.4.

[14] Indeed, according to defense counsel, this Court even noted during a prior status conference that it had concerns regarding Plaintiffs' ability to obtain class certification.

### 2. The Risk of Litigation

In accepting this case, Class Counsel committed to a long and arduous fight against a sophisticated Defendant with experienced counsel. Class Counsel was prepared to commit, and did commit, significant resources to this case, including the resources of three law firms and numerous lawyers and paralegals. As of the date of filing this Motion, Class Counsel have expended in excess of $ 200,000 in out-of-pocket costs and spent more than 2,600 hours pursuing this matter. Class Counsel assumed the risk that they would not be paid and that they would lose all costs if this case failed.

### 3. The Contingent Nature of the Fee and the Financial Burden Carried by the Plaintiffs

Courts have recognized the need to reward Class Counsel who accept a case on a contingent fee basis because of the risk of non-payment that they face. It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299; 1300-01 (9th Cir. 1994) ("in the common fund context, attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose.").

The Court should not overlook the real risks that Class Counsel when accepting contingent class action cases, such as this one. Nationwide insurance class actions of this type are, by their very nature, complicated and time-consuming. Any law firm undertaking representation of a large number of class

members inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. The demands and risks of this type of litigation overwhelm the resources-and deter participation-of many traditional plaintiff law firms. This factor strongly supports the fee requested by Class Counsel.

### 4. The Skill Required and Quality of Work

This Court has seen Class Counsel's efforts first-hand and is able to evaluate the quality of their work and skill.  The quality and efficiency of Class Counsel's work on this case is also reflected in the result and its timing. "Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements - especially in complex class action cases - should be done." *In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090, 1990 U.S. Dist, 1990 WL 454747 at *7 (S.D. Cal. Aug. 30, 1990) (awarding 30% of common fund where "Class counsel obtained this result in a very short period of time"). That Class Counsel successfully negotiated settlement relatively early in the case (and before a merits certification decision), thereby avoiding further expenditure of resources by the parties and the Court, further demonstrates their skill and efficiency.

In summary, the sum of Class Counsel's actual lodestar and expenses dwarfs the requested fee.  The requested fee is reasonable in light of the substantial time and commitment Class Counsel have devoted to this case, and that reasonableness is only highlighted by consideration of the applicable Ninth Circuit fairness factors.

## IV. THE REQUESTED SERVICE AWARDS ARE REASONABLE

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Courts routinely approve such awards and they are a common fixture in class action litigation. *See e.g. Fulford v. Logitech, Inc.*, No. 08-cv-02041, 2010 U.S. Dist., 2010 WL 807448, at *3 n.1 (N.D. Cal. March 5, 2010) (collecting cases awarding service payments ranging from $5,000 to $40,000); *Woo v. Home Loan Group, L.P.*, No. 07-CV-202, 2008 U.S. Dist., 2008 WL 3925854, at *6 (S.D. Cal. Aug. 25, 2008) ("The Court further approves a payment to the Class Representative ... as an enhancement in the amount of $7,500 for the initiation of this action, services performed, and the risks undertaken ...").[15] The Ninth Circuit has identified three factors that a Court should consider in approving a service award: "[1] the actions the plaintiff has taken to protect the interests of the class, [2] the degree to which the class has benefitted from those actions, and [3] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing,* 327 F.3d 938 (9th Cir. 2003) (citing and quoting factors from *Cook*, 142 F.3d at 1016). Here, Class Plaintiffs are eminently deserving of the $25,000 aggregate incentive award, for without their willingness to step forward this settlement benefitting more than 150,000 individuals would not have been possible.[16] First, it must be noted that no objection thus far to the requested incentive award has been filed by a Class member. The Unopposed

---

[15] *In Lo Re v. Chase Manhattan Corp.*, 1979 U.S. Dist. LEXIS 12210, 19 FEP Cas. (BNA) 1366 (S.D. N.Y. 1979), the court approved payment of $229,000 out of a $1,579,000 settlement fund to the named plaintiffs for their individual claims. One of the factors considered by the court in determining that such payments were fair was the fact that none of the absent class members objected to the enhancements. The court held that this fact showed that the class members were not offended by these enhancements. *Id* at 17.

[16] *See* Declarations of Class Plaintiffs attached hereto as Exhibits D and E.

Motion for Preliminary Approval and the Class Notice both fully disclosed that Class Counsel would seek these awards, stating that "Class Counsel will also ask the Court to approve an incentive award to the Class Representatives in an amount not to exceed $25,000." Plaintiffs have consistently acted to protect the interests of the Class, and there can be no doubt that the Class has benefited from their conduct. In terms of the time and effort expended by the Class Plaintiffs, that factor clearly weighs in favor of the award. Collectively, the Class Plaintiffs have spent more than **330** hours on this litigation.[17] (Declaration of John V.R. Krummell, Exhibit "D"). Clearly, that type of substantive dedication warrants a commensurate incentive award.

Additionally, the Class Plaintiffs risked a potential judgment against them if this matter was unsuccessful. Pertinent case law indicates that in many situations a losing party is liable for the prevailing party's costs. Therefore, the Plaintiffs could have been liable for thousands of dollars in the event of an adverse verdict. Few individuals are willing to accept such risks, and the Class Plaintiffs voluntarily championed the rights of the Class Members at their own peril.

In Class Counsel's opinion, the Class Plaintiffs have acted in the very best interest of the class at all times and are deserving of the combined $25,000 incentive award requested on their behalf.

## V.   CONCLUSION

In all respects, this was a complex, protracted matter involving unique legal and factual issues. Class Plaintiffs, and Class Counsel, achieved an excellent result for the thousands of Class Members. Accordingly, Class Counsel respectfully

---

[17] In fact, much of that time (such as organizing documents, reviewing documents, etc.) was spent by employees of Class Plaintiffs' business, ASP, at the direction of Class Plaintiffs. Thus, not only did Class Plaintiffs suffer from the loss of that employee time which could have been spent pursuing business matters, Class Plaintiffs' business paid those employees for that time spent furthering this litigation. (Declaration of Christopher Krummell, Exhibit "E").

1  submit that their request for attorneys' fees, costs and incentive awards in the
2  amount of $930,000.00 is reasonable, fair, warranted and should be approved.

DATED: December 9, 2010

LAW OFFICES OF LARRY A. SACKEY
HORN ALYWARD & BANDY, LLC
BREMAN LAW OFFICES

By: _____

Larry A. Sackey
Joe Kronawitter
Teresa K. Breman

Attorneys for Plaintiffs, JOHN V.R. KRUMMELL and MATTHEW W.T. KRUMMELL, in their capacities as Co-Trustees of the Trust Estate of JOHN D. KRUMMELL, on behalf of themselves and all others similarly situated